THE PEOPLE OF THE STATE OF NEW YORK ex rel. HAROLD SANFORD GLENDENING, Appellant, *v.* ALICIA MADDOX GLENDENING, Respondent.

First Department, March 3, 1939.

*Paul W. Williams* [*John T. Cahill* and *Mathias F. Correa* with him on the brief], for the appellant.

*Maurice Finkelstein* of counsel [*Frieda B. Hennock*, attorney], for the respondent.

GLENNON, J. The respondent by notice of motion, dated September 16, 1938, and returnable September 29, 1938, made an application to modify an order which was entered in this habeas corpus proceeding on February 25, 1936, by directing that the custody of an infant son be awarded to her. The appellant by a cross-motion requested that the rights of visitation, heretofore given to the respondent in the same order, should be restricted.

Two orders were entered on December 7, 1938, referring the issues of fact and law to a referee to hear and report. These orders provided, in substance, that in the event of the failure of the respondent, within five days from the entry thereof, to file a statement in writing agreeing to pay the cost of the reference, the appli-

cations would be referred to an official referee to be designated in a supplementary order. The respondent did not wish to have an official referee hear and report, since she signed and acknowledged the following statement:

" I, the undersigned, Alicia DuPont Kent, hereby consent to the appointment of a Referee in the above entitled proceeding and agree that I will pay the fees of a Referee, as fixed by the Court, and agree to pay the cost of the stenographer's minutes to be used by the Referee, and agree also to waive the statutory fees of the Referee.

" Dated, New York, N. Y., November 25, 1938."

The appellant contends, and properly so, that there should be no reference. While we believe it unnecessary to review at length the facts out of which the habeas corpus proceeding grew, still, we believe a brief reference thereto is necessary.

The relator and respondent were married in England on June 28, 1922. One child, a son, was born of the marriage on July 27, 1923, in France. The parties on July 14, 1924, became residents of New York county where the relator has at all times since remained. He is a member of the bar of this State engaged in the practice of his profession. The father and mother of the child lived together here until February 11, 1925, when she left the appellant and her infant son and refused to return to her home. In May of that year the appellant took the child to his mother's home in Norwalk, Conn. Thereafter the respondent instituted a habeas corpus proceeding and an order was entered upon consent on May 29, 1925, granting the custody of the child to the mother and providing for the right of visitation on the part of the father for a period down to and including June 1, 1926.

The mother went to Reno, Nev., on August 5, 1925, and took the child with her without the appellant's knowledge or consent. Her purpose was to procure a divorce. She sought to have the appellant appear in the action. Believing that a divorce would have a bad effect upon the life of the child, the appellant absolutely refused to do so. The respondent even offered her husband the sum of $75,000 for an appearance in the Nevada action. Needless to say, he did not accept. Nevertheless, without his appearance, she procured a divorce on September 11, 1926. During the same month she returned and again took up a residence in New York city.

An arrangement was entered into between the parties on November 10, 1928, which provided for the custody of the child and the right of visitation. The agreement in part provided that the child was not to be taken out of the school " or any great distance from New York without consultation." Nevertheless, the respondent

within three months thereafter took the child down to Panama. The respondent returned to New York on April 20, 1929, but left the child in Panama. On May 1, 1929, she was served with a writ of habeas corpus returnable on May seventh. An order dated May 10, 1929, was entered on consent of the parties in that proceeding awarding the custody of the child to the father with certain rights of visitation to the mother.

A prior application, on the part of the respondent, to amend that order came on to be heard on August 5, 1935. The issues of law and fact were referred to Judge GAVEGAN as official referee to hear and report. Considerable testimony was taken between October 7, 1935, and January 6, 1936. In his report which appears under the title which this proceeding bears (159 Misc. 215), the official referee recommended that the respondent's application for a change of custody should be denied but suggested certain modifications in respect to the rights of visitation by the respondent. The report was confirmed at Special Term on January 27, 1936, and the order thereon was entered on February 25, 1936.

It might be remarked in passing that the respondent is a woman of considerable means. She is the sole beneficiary of a trust fund which was set up under the will of her mother. The appellant on the other hand, possessed of an excellent education and apparently a man of culture and refinement, depends for his livelihood on the practice of law. His income, however, is sufficient to take care of the ordinary wants of himself and his son. As far as the record shows and as far as the law of this State is concerned, he is still the lawful husband of the respondent. She, however, in April, 1933, went to England and met one Victor Llewelyn. She returned to this country with him in June, 1933, and went to the State of Nevada, where they entered into a marriage ceremony. In July of that year she and Llewelyn returned to England, where she lived with him until May, 1934, when she returned to this country. In August she went back to her home in England, where she remained until September, 1934. In the fall of that year Llewelyn instituted an annulment action against her in England. A decree in his favor was entered after she had failed to appear.

It is admitted by the respondent in one of her affidavits on the present motions that she was married to George Ruddle Kent on August 8, 1936, and it is not denied by her that since that date she has continued to live openly with the said Kent in New York county and still holds him forth as her husband.

Thus we have a woman who, according to the laws of New York, is living in open and notorious adultery in this State, seeking to modify the order entered upon her consent on May 10, 1929.

We are inclined to the view that the court should have disposed of the motions upon the papers without referring the applications to a referee to hear and report. Respondent's position is much weaker now than it was at the time the last reference was held in this case. Then, at least, she had ceased her relationship with Llewelyn, whereas now she is doing what the law of this State prohibits. She testified in the proceeding before Judge GAVEGAN that she had been advised by eminent counsel that her Nevada decree was not valid in New York and that the appellant is still her legal husband.

The situation presented here, in so far as the matrimonial relationship of respondent and appellant is concerned, is similar to that which appeared before this court in *McGown* v. *McGown* (19 App. Div. 368; affd. on opinion below, 164 N. Y. 558), where Judge PATTERSON said in part: "By the judgment appealed from, an absolute divorce was granted to the plaintiff from the defendant on the ground of the adultery of the latter. That adultery consisted in her cohabitation with another man than the plaintiff, with which other man she entered into a ceremonial marriage in North Dakota, on September 24, 1896, and with whom she has since lived and cohabited as his wife in the city of New York. She claims as a defense to this action that her present so-called matrimonial relations with the man she married in Dakota are not adulterous, and that her cohabitation with him is lawful and innocent, and in support of that contention she asserts that eight days prior to her North Dakota marriage she obtained a decree of divorce in that State from the plaintiff. That such a decree was entered is proven, but it is also proven that the plaintiff was never served with process in that action in North Dakota, but was personally served therewith in the State of New York, and that he did not appear therein and was never a resident of North Dakota. * * * Under the law of this State the marriage between the plaintiff and the defendant was not dissolved by the decree of the Dakota court. The defendant still remained the wife of the plaintiff and while so remaining she cohabited with another man and lived with him matrimonially. The intercourse which results from such a relation, with a man other than the plaintiff, constitutes adultery. * * * It is her act that constitutes the offense, and no matter under what claimed sanction she may have performed it, she cannot excuse it as to him, or keep him bound to that marriage by claiming immunity through a decree of a foreign tribunal in nowise binding upon him in this jurisdiction, and which cannot here take away or impair his right in any respect." In discussing the provisions of the decree in that case which awarded the custody

of the child to the father, Judge PATTERSON said: " He was entitled to it and should have it. On this record the mother is an unfit person to bring up the child, she having, as adjudged, been guilty of adultery. * * * She left her child behind her with its father. He was thought to be a proper custodian of that child while she was in the far west seeking a divorce from the father of her child, and a technical justification for repudiating him and marrying another man."

The thought expressed by Mr. Justice PATTERSON in the case then under consideration applies with equal force to the facts which are now before us. It cannot be questioned that the appellant has devoted himself to the care, education and support of his child, while the mother has flagrantly disregarded her duties and obligations in so far as the welfare of the child is concerned. Since that is so, the court should have denied the application made by the respondent to modify the order entered at Special Term on February 25, 1936.

We next consider the cross-motion made by the appellant. He asks that the order be modified so as (1) to prevent the respondent from removing the infant from the State of New York, as she has done in the past, and (2) to protect the child from any contact with the mother's most recent invalid marital relationship.

We believe that the appellant's application was well founded under the authorities of this State and in view of the mother's latest matrimonial experience. Provision number " 6 " in the order entered on February 25, 1936, should be modified so as to read as follows:

" 6. That the mother shall not at any time remove the said infant from the State of New York or from the jurisdiction of this Court, without the written consent of the father. Neither party shall conceal the whereabouts of the infant from the other party at any time, but must keep the other party informed as to the whereabouts of said child at all times."

In addition thereto, the order should be modified so as to provide that the infant shall not have any personal contact with George Ruddle Kent.

The orders entered hereon at Special Term on December 7, 1938, should be reversed, without costs, and the matter remitted to Special Term for further proceedings in accordance with this opinion.

MARTIN, P. J., TOWNLEY, UNTERMYER and COHN, JJ., concur.

Orders unanimously reversed, without costs, and matter remitted to Special Term for further action in accordance with opinion.